Steven Humpa et al., Appellees, v. Russell W. Hedstrom, Appellant.

Gen. Nos. 45,526, 45,591.

Opinion filed
December 20, 1951. Released for publication January 3, 1952.

DILLARD B. BAKER, of Chicago, for appellant; SAMUEL
A. STRAUSS, of Chicago, of counsel.

WILLIAM PARKER WARD, of Chicago, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Two appeals have been consolidated, one from a decree entered December 14, 1950 pursuant to a mandate of this court reversing and remanding a previous decree in the same case, and the second, from an order finding defendant guilty of contempt for failure to repay funds as ordered and committing him to the county jail, where he was confined from February 21, 1951 to September, 1951 when he was released on giving bail. An examination of the opinion of this court on the first appeal reveals that the Hedstrom Corporation, all but 15% of the stock of which was owned by defendant and his family, had in 1943 established a trust known as the Oscar W. Hedstrom Corporation Profit Sharing and Employees Saving Trust. Two deposits, one of $33,000 and one of $56,000, were made into the trust, representing 20% of the corporation's net income before federal taxes, computed according to a formula set forth in the trust instrument which, however, provided for such payments after taxes. Subsequently, the corporation needed funds to pay its income taxes, and $86,000 was withdrawn for that purpose. Notes of the corporation were given for the withdrawals. The government, for which the company had done much work, lodged claims for renegotiations of its wartime contracts and these claims were finally fixed at $115,000 and $100,000. The end result of all this was that in December 1946 the

corporation was thrown into bankruptcy. In the opinion filed in the previous case, the court said: "The 20 per cent contributions to the trust, as adjusted under the renegotiation proceedings, would have aggregated $56,000."

■ This suit was brought by the beneficiaries to compel defendant as trustee to repay to the trust the moneys withdrawn. We quote the following from the opinion of the court on the previous appeal:

"Defendant argues that he did not profit personally at the expense of the corporation or of the trust; that the trust was only a generous gesture on the part of the corporation, depending on corporation profits for its corpus; that plaintiffs contributed nothing to it; and that the trust was wholly dependent upon future profits of the corporation, if any, which in turn had to be kept going as a successful enterprise in order to earn profits. In other words, he takes the position that since the trust was created from corporate funds during a period of prosperity, it was not a violation of trust principles to loan them back to the corporation without security in times of adversity, and that strict equitable principles should not be applied to his transactions. By analogy, a trust created by a father for his children may likewise be termed 'a generous gesture' on the part of the settlor; nevertheless, if the 'generous' settlor is also a trustee, the law views him solely in his role of trustee, and exacts of him in the management of the trust funds that care and prudence usually required of trustees in the performance of their duties. If the parent, after creating the trust, became a pauper, that fact would not destroy the trust."

It is obvious from a reading of that opinion that the court held that even though the trust was voluntarily and generously created, it was nevertheless a valid trust, and all the incidents of such a trust were appli-

cable to it, including the duty to exercise the diligence imposed on a trustee with respect to investments. This court also found that it was the intention that the renegotiations should be taken into account in determining the proper contributions of the corporation to the trust, and the liability of the trustee was to be derived therefrom. Taking these into account, the amount owing to the trust would have aggregated approximately $56,000. No point was made with respect to interest, but considering the origin of the trust and the circumstances under which the prospects of the company were blighted, the court certainly did not intend to hold that interest was recoverable against the trustee. That is a matter for the discretion of the court, and we are of the opinion that fair discretion would not require the payment of interest.

██ An accounting should be taken to determine the extent to which the renegotiations reduced the amount that should have been paid into the trust, and defendant charged with such reduced amount less such credits as should be allowed for dividends in bankruptcy, defendant's personal interest in the trust, and any other credits which in equity should be allowed to him.

██ ██ With respect to the contempt proceedings and the appeal in case No. 45591, not every decree for the payment of money is enforceable by imprisonment for contempt. Defendant has offered up what he says constitutes all his property. No evidence has been presented to show that his noncompliance with the decree is wilful. Under these circumstances, he cannot be subjected to a confinement for contempt. *Tudor v. Firebaugh,* 364 Ill. 283; *Goodwillie v. Millimann,* 56 Ill. 523; *Maggio v. Zeitz,* 333 U. S. 56. In the case last mentioned we quote the following from the opinion of the court, page 64:

292

"Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however reprehensible, warrant issuance of an order which creates a duty impossible of preformance, so that punishment can follow. It should not be necessary to say that it would be a flagrant abuse of process to issue such an order to exert pressure on friends and relatives to ransom the accused party from being jailed."

The order committing defendant for contempt is hereby reversed, and the decree is reversed and the cause remanded to the trial court to take further proceedings in accordance herewith.

*Order of contempt reversed. Decree reversed and cause remanded.*

TUOHY, P. J. and ROBSON, J., concur.